DEPARTMENT OF HEALTH AND HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, MD 21244-1850



**SMD: 18-002**

**RE: Opportunities to Promote Work and Community Engagement Among Medicaid Beneficiaries**

January 11, 2018

**Dear State Medicaid Director:**

The Centers for Medicare & Medicaid Services (CMS) is announcing a new policy designed to assist states in their efforts to improve Medicaid enrollee health and well-being through incentivizing work and community engagement among non-elderly, non-pregnant adult Medicaid beneficiaries who are eligible for Medicaid on a basis other than disability.[1]  Subject to the full federal review process, CMS will support state efforts to test incentives that make participation in work or other community engagement a requirement for continued Medicaid eligibility or coverage for certain adult Medicaid beneficiaries in demonstration projects authorized under section 1115 of the Social Security Act (the Act).  Such programs should be designed to promote better mental, physical, and emotional health in furtherance of Medicaid program objectives.  Such programs may also, separately, be designed to help individuals and families rise out of poverty and attain independence, also in furtherance of Medicaid program objectives.[2]

This guidance describes considerations for states that may be interested in pursuing demonstration projects under section 1115(a) of the Act that have the goal of creating incentives for Medicaid beneficiaries to participate in work and community engagement activities.  It addresses the application of CMS' monitoring and evaluation protocols for this type of demonstration and identifies other programmatic and policy considerations for states, to help them design programs that meet the objectives of the Medicaid program, consistent with federal statutory requirements.

---

[1] States will have the flexibility to identify activities, other than employment, which promote health and wellness, and which will meet the states' requirements for continued Medicaid eligibility.  These activities include, but are not limited to, community service, caregiving, education, job training, and substance use disorder treatment.

[2] Section 1901 of the Social Security Act authorizes appropriations to support State Medicaid programs: "For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care[.]"

**Health Benefits of Community Engagement, including Work and Work Promotion**

While high-quality health care is important for an individual's health and well-being, there are many other determinants of health. It is widely recognized that education, for example, can lead to improved health by increasing health knowledge and healthy behaviors.[3] CMS recognizes that a broad range of social, economic, and behavioral factors can have a major impact on an individual's health and wellness, and a growing body of evidence suggests that targeting certain health determinants, including productive work and community engagement, may improve health outcomes. For example, higher earnings are positively correlated with longer lifespan.[4] One comprehensive review of existing studies found strong evidence that unemployment is generally harmful to health, including higher mortality; poorer general health; poorer mental health; and higher medical consultation and hospital admission rates.[5] Another academic analysis found strong evidence for a protective effect of employment on depression and general mental health.[6] A 2013 Gallup poll found that unemployed Americans are more than twice as likely as those with full-time jobs to say they currently have or are being treated for depression.[7] Other community engagement activities such as volunteering are also associated with improved health outcomes[8,9], and it can lead to paid employment.

CMS, in accordance with principles supported by the Medicaid statute, has long assisted state efforts to promote work and community engagement and provide incentives to disabled beneficiaries to increase their sense of purpose, build a healthy lifestyle, and further the positive physical and mental health benefits associated with work. CMS supports state efforts to enable eligible individuals to gain and maintain employment. Optional Medicaid programs such as the Medicaid Buy-In, for example, allow workers with disabilities to have higher earnings and maintain their Medicaid coverage. For beneficiaries who are able to work but have been unable to find employment, some states encourage employment through concurrent enrollment in state-sponsored job training and work referral, either automatically or at the option of the Medicaid beneficiary. A number of states have also initiated programs to connect non-disabled Medicaid beneficiaries to existing state workforce programs.

States also provide a range of employment supports to individuals receiving home and community based services under section 1915(c) waivers or section 1915(i) state plan services. These include habilitation services designed to "assist individuals in acquiring, retaining and improving the self-help, socialization, and adaptive skills necessary to reside successfully in

[3] Bartley, M and Plewis, I. (2002) Accumulated labor market disadvantage and limiting long term illness. International Journal of Epidemiology 31:336-41.

[4] Chetty R, Stepner M, Abraham S, et al. The association between income and life expectancy in the United States, 2001-2014. JAMA. 2016; 315(16):1750-1766.

[5] Waddell, G. and Burton, AK. Is Work Good For Your Health And Well-Being? (2006) EurErg Centre for Health and Social Care Research, University of Huddersfield, UK

[6] Van der Noordt, M, Jzelenberg, H, Droomers, M, and Proper, K. Health effects of employment: a systemic review of prospective studies. BMJournals. Occupational and Environmental Medicine. 2014: 71 (10).

[7] Crabtree, S. In U.S., Depression Rates Higher for Long-Term Unemployed. (2014). Gallup. http://news.gallup.com/poll/171046/depression-rates-higher-among-long-term-unemployed.aspx

[8] United Health Group. Doing good is good for you. 2013 Health and Volunteering Study.

[9] Jenkins, C. Dickens, A. Jones, K. Thompson-Coon, J. Taylor, R. and Rogers, M. Is volunteering a public health intervention? A systematic review and meta-analysis of the health and survival of volunteers BMC Public Health 2013. 13 (773)

home and community based settings."[10]   These activities have been historically focused on services and programs for individuals with disabilities and receipt of these supports is not a condition of eligibility or coverage.

The successes of all these programs suggest that a spectrum of additional work incentives, including those discussed in this letter, could yield similar outcomes while promoting these same objectives.

**New Opportunity for Promoting Work and Other Community Engagement for Non-Elderly, Non-Pregnant Adult Beneficiaries Who Are Eligible for Medicaid on a Basis Other than Disability**

On March 14, 2017, the Department of Health and Human Services (HHS) and CMS issued a letter to the nation's governors affirming the continued commitment to partner with states in the administration of the Medicaid program. In the letter, we noted that CMS will empower states to develop innovative proposals to improve their Medicaid programs. Demonstration projects under section 1115 of the Act give states more freedom to test and evaluate approaches to improving quality, accessibility, and health outcomes in the most cost-effective manner. CMS is committed to allowing states to test their approaches, provided that the Secretary determines that the demonstrations are likely to assist in promoting the objectives of the Medicaid program.

Some states are interested in pursuing demonstration projects to test the hypothesis that requiring work or community engagement as a condition of eligibility, as a condition of coverage, as a condition of receiving additional or enhanced benefits, or as a condition of paying reduced premiums or cost sharing, will result in more beneficiaries being employed or engaging in other productive community engagement, thus producing improved health and well-being. To determine whether this approach works as expected, states will need to link these community engagement requirements to those outcomes and ultimately assess the effectiveness of the demonstration in furthering the health and wellness objectives of the Medicaid program.[11]

Today, CMS is committing to support state demonstrations that require eligible adult beneficiaries to engage in work or community engagement activities (e.g., skills training, education, job search, caregiving, volunteer service) in order to determine whether those requirements assist beneficiaries in obtaining sustainable employment or other productive community engagement and whether sustained employment or other productive community engagement leads to improved health outcomes. This is a shift from prior agency policy regarding work and other community engagement as a condition of Medicaid eligibility or coverage,[12] but it is anchored in historic CMS principles that emphasize work to promote health and well-being.

We look forward to working with states interested in testing innovative approaches to promote work and other community engagement, including approaches that make participation a condition of eligibility or coverage, among working-age, non-pregnant adult Medicaid beneficiaries who qualify for Medicaid on a basis other than a disability. Consistent with section

---

[10] Social Security Act, section 1915 (c)(5)(A)
[11] https://www.medicaid.gov/medicaid/section-1115-demo/about-1115/index.html
[12] https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/?entry=29927

1115(a) of the Act, demonstration applications will be reviewed on a case-by-case basis to determine whether the proposed approach is likely to promote the objectives of Medicaid. CMS is also committed to ensuring state accountability for the health outcomes produced by the program, and demonstration projects approved consistent with this guidance will be required to conduct outcomes-based evaluations, based on evaluation designs subject to CMS approval. We note that approved demonstration projects that promote positive health outcomes may also achieve the additional goal of the Medicaid program to promote independence.

<u>State Flexibility in Program Design</u>
In its work with states, CMS has identified a number of issues for states to consider as they develop programs to promote work and other forms of community engagement among Medicaid beneficiaries. Each state is different, and states are in the best position to determine which approaches are most likely to succeed, based on their specific populations and resources. In drafting demonstration project applications, states should articulate the reasoning behind their proposal. While CMS will evaluate each demonstration project application on its own merits, we believe the following considerations will facilitate states' work to develop proposals and allow them to focus their resources on permissible areas of innovation while allowing CMS to maintain its oversight and fiduciary responsibilities.

*Alignment with Other Programs*
Many states already have systems in place for implementing employment and community engagement programs. For instance, beginning in 1996, welfare reform provided states with more flexibility to manage their state welfare programs under the Temporary Assistance for Needy Families (TANF) program consistent with the four statutory purposes of TANF. Supplemental Nutrition Assistance Program (SNAP) rules require all recipients to meet work requirements unless they are exempt. Exemptions may include, but are not limited to age, disability, responsibility for a dependent, participation in a drug addiction or alcohol treatment and rehabilitation program, or another state-specified reason.

CMS supports states' efforts to align SNAP or TANF work or work-related requirements with the Medicaid program as part of a demonstration authorized under section 1115 of the Act, where such alignment is appropriate and consistent with the ultimate objective of improving health and well-being for Medicaid beneficiaries. Based on states' experiences with their TANF or SNAP employment programs, they may wish to consider aligning Medicaid requirements with certain aspects of the TANF or SNAP programs, such as:

- Excepted populations (e.g., pregnant women, primary caregivers of dependents, individuals with disabilities or health-related barriers to employment, individuals participating in tribal work programs, victims of domestic violence, other populations with extenuating circumstances, full time students);
- Protections and supports for individuals with disabilities and others who may be unable to meet the requirements;
- Allowable activities (e.g., subsidized and unsubsidized employment, educational and vocational programs, job search and job readiness, job training, community service, caregiving, and other allowable activities under TANF or SNAP) and required hours of participation (e.g., hours/week, including hours completed under TANF or SNAP);

- Changes to requirements or allowable activities due to economic or environmental factors (e.g., unemployment rate in affected areas);
- Enrollee reporting requirements (e.g., frequency and method for reporting work activities); or
- The availability of work support programs (e.g., transportation or child care) for individuals subject to work and community engagement requirements.

CMS will consider the extent to which proposed Medicaid community engagement or work requirements align with features of the TANF or SNAP programs and whether that alignment is consistent with Medicaid objectives. For example, aligning certain requirements across these programs would streamline eligibility and could reduce the burden on both states and beneficiaries and maximize opportunities for beneficiaries to meet the requirements. Many states have already developed or are developing integrated eligibility systems, and have taken advantage of the waiver of OMB Circular A-87 cost allocation rules (available through CY 2018) to support the integration of eligibility systems between health and human services programs. These integrated systems may be poised to allow for alignment of eligibility requirements for a segment of the Medicaid population, and to facilitate implementation of streamlined application and verification processes. Where additional information technology systems enhancements are required to support Medicaid demonstration activities, costs will be expected to be reasonable and comply with Medicaid statute and regulations. Federal Medicaid funding will be limited to allowable activities directly linked to Medicaid beneficiaries.

Individuals enrolled in and compliant with a TANF or SNAP work requirement, as well as individuals exempt from a TANF or SNAP work requirement, must automatically be considered to be complying with the Medicaid work requirements. To the degree that specific good cause exemptions exist in a state TANF or SNAP program, the state should make a reasonable effort to incorporate similar exemptions within a framework for a Medicaid community engagement and work requirement. States should also describe how they will communicate to beneficiaries any differences in program requirements that individuals will need to meet in the event they transition off of SNAP or TANF but remain subject to a Medicaid community engagement or work requirement.

*Populations Subject to Work Promotion/Community Engagement Requirements*
States should clearly identify the eligibility groups subject to the work and community engagement requirements and included in the demonstration. States may consider submitting for CMS consideration a proposal to tailor such requirements to adults within specific eligibility groups or sub-populations within the eligibility group. CMS recognizes that adults who are eligible for Medicaid on a basis other than disability (i.e. classified for Medicaid purposes as "non-disabled") will be subject to the work/community engagement requirements as described in this guidance. These individuals, however, may have an illness or disability as defined by other federal statutes that may interfere with their ability to meet the requirements. States must comply with federal civil rights laws, ensure that individuals with disabilities are not denied Medicaid for inability to meet these requirements, and have mechanisms in place to ensure that reasonable modifications are provided to people who need them. States must also create exemptions for individuals determined by the state to be medically frail and should also exempt

from the requirements any individuals with acute medical conditions validated by a medical professional that would prevent them from complying with the requirements.

States are required, in the design and administration of Medicaid demonstration projects, to comply with all applicable federal civil rights laws, including the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, Title VI of the Civil Rights Act, the Age Discrimination Act, and other applicable statutes. The federal disability rights laws are of particular importance, given the broad scope of protection under these laws and the fact that disabilities can affect an individual's ability to participate in work and community engagement activities. States may not impose such requirements on individuals classified as "disabled" for Medicaid eligibility purposes.

CMS recognizes that individuals who are eligible for Medicaid on a basis other than disability (and are therefore classified for Medicaid purposes as "non-disabled") may have a disability under the definitions of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, or section 1557 of the Affordable Care Act. States should include, in their proposals, information regarding their plans for compliance with these requirements, including provision of reasonable modifications in work or community engagement requirements. The reasonable modifications must include exemptions from participation where an individual is unable to participate for disability-related reasons, modification in the number of hours of participation required where an individual is unable to participate for the required number of hours, and provision of support services necessary to participate, where participation is possible with supports. States may not receive Federal Medicaid match for such supportive services for individuals enrolled in these Medicaid demonstrations. In addition, States should evaluate individuals' ability to participate and the types of reasonable modifications and supports needed. CMS, in consultation and coordination with the HHS Office for Civil Rights, is available to assist states in designing projects that comply with the civil rights laws.

CMS also recognizes that many states currently face an epidemic of opioid addiction, which has been declared a national public health emergency by the Secretary. States will therefore be required to take certain steps to ensure that eligible individuals with opioid addiction and other substance use disorders (who may not be defined as disabled for Medicaid purposes but may be protected by disability laws) have access to appropriate Medicaid coverage and treatment services. States must make reasonable modifications for these individuals, consistent with states' obligations under civil rights laws described above, and specifically identify such modifications in their demonstration applications. Such modifications may include counting time spent in medical treatment towards an individual's work/community engagement requirements, or exempting individuals participating in intensive medical treatment (e.g. inpatient treatment or intensive outpatient treatment) for substance use disorder from the work/community engagements requirements. CMS will also consider other reasonable modifications that states may design and propose in furtherance of their obligations under disability laws. Finally, states should identify, in their demonstrations, other strategies to support such individuals in meeting the requirements, and in obtaining access to treatment when they are ready.

*Range of community engagement activities*

We encourage states to consider a range of activities that could satisfy work and community-engagement requirements. Career planning, job training, referral, and job support services offered should reflect each person's employability and potential contributions to the labor market. As many Medicaid beneficiaries live in areas of high unemployment, or are engaged as caregivers for young children or elderly family members, states should consider a variety of activities to meet the requirements for work and community engagement, including volunteer and tribal employment programs, in addition to the activities identified to meet the requirements under SNAP or TANF.

*Beneficiary supports*

States will be required to describe strategies to assist beneficiaries in meeting work and community engagement requirements and to link individuals to additional resources for job training or other employment services, child care assistance, transportation, or other work supports to help beneficiaries prepare for work or increase their earnings. However, this demonstration opportunity will not provide states with the authority to use Medicaid funding to finance these services for individuals. Nothing in this letter changes the types of services eligible for Federal match; states may only receive Federal Medicaid match for allowable services in accordance with statute.

CMS expects that states will design their programs consistent with statutory and regulatory procedural requirements, including through provisions to ensure Medicaid beneficiaries' due process rights are protected. States are encouraged to include procedures that allow for an assessment of individuals' disabilities, medical diagnosis, and other barriers to employment and self-sufficiency in order to identify appropriate work and community engagement activities and services, supports, and any reasonable modifications necessary for those individuals to participate in work and community engagement activities and attain long-term employment and self-sufficiency.

*Attention to market forces and structural barriers*

CMS recognizes that States will need flexibility to respond to the local employment market by phasing in and/or suspending program features, as necessary. A state may need time to establish supports for beneficiaries in regions with limited employment opportunities, for example, or localities facing particular economic stress or lack of viable transportation. The state should describe its plan for assessing and addressing these and related issues in its demonstration application. In addition, the state should consider whether other circumstances may arise that could prevent individuals from complying with a community engagement and work requirement. States should detail how they would support individuals in meeting program requirements during those periods, which may include incorporation of good cause exemptions similar to those used in SNAP and TANF.

Transparency

CMS remains committed to supporting reasonable public input processes that provide states an opportunity to consider the views of Medicaid beneficiaries, applicants, and other stakeholders and gather input that may support continuous improvement of the program. Demonstration projects under section 1115 of the Act intended to promote work and other community

engagement are subject to all relevant public notice and transparency requirements, including those described in 42 C.F.R. Part 431, subpart G. Where applicable, states will also be required to comply with tribal consultation requirements and describe how they are responding to comments received through the tribal consultation process.

Budget Neutrality

To promote long-term sustainability of the Medicaid program for states and the federal government, we will continue to require states to demonstrate that projects authorized under section 1115 of the Act are budget neutral. CMS will work with states to identify those components of the demonstration that will be included in budget neutrality calculations and provide technical assistance as needed in determining budget neutrality. States will not be permitted to accrue savings from a reduction in enrollment that may occur as a result of using this section 1115 authority. States will be required to document the financial performance of the demonstration and track expenditures to ensure the demonstration does not exceed established budget neutrality limits. States will provide updated budget neutrality workbooks with every required monitoring report, and the specific reporting requirements for monitoring budget neutrality will be set forth in the demonstration special terms and conditions (STCs).

Monitoring and Evaluation

CMS remains committed to ensuring state accountability for the health and well-being of Medicaid enrollees. Monitoring and evaluation are important for understanding these outcomes and the impacts of the state innovations being demonstrated. We are undertaking efforts to help states monitor the elements of their programs, while giving them the flexibility to adapt to changing conditions in their states. States will be required to develop monitoring plans and submit regular monitoring reports describing progress made in implementing their requirements for work and other community engagement activities. We will also undertake our own monitoring and technical assistance efforts through regular communications with states and will review written reports from states on a quarterly basis.

*Monitoring*

States approved to implement work and other community engagement requirements for Medicaid beneficiaries will submit to CMS a draft of proposed metrics for quarterly and annual monitoring reports, and CMS will work with the state to jointly identify metrics for these reports. Metrics will reflect the major elements of the demonstration, including but not limited to data that applies to the work and other community engagement initiatives. CMS will combine these programmatic metrics with general metrics aimed at monitoring beneficiary enrollment and termination for failure to meet program requirements, access to services for both beneficiaries and individuals terminated for failure to meet the requirements, and the overall functioning of the demonstration.

States will be subject to other monitoring and reporting requirements, consistent with regulations in 42 C.F.R. § 431.420 and § 431.428. State reports will be required to provide sufficient information to document key challenges, underlying causes of those challenges, and strategies for addressing those challenges, as well as key achievements and the conditions and efforts that lead to those successes. Specific details related to monitoring and reporting for each state's demonstration will be discussed with states and described in the demonstration STCs.

*Evaluation*

States will also be required to evaluate health and other outcomes of individuals that have been enrolled in and subject to the provisions of the demonstration, and will be required to conduct robust, independent program evaluations. Evaluations must be designed to determine whether the demonstration is meeting its objectives, as well as the impact of the demonstration on Medicaid beneficiaries and on individuals who experience a lapse in eligibility or coverage for failure to meet the program requirements or because they have gained employer-sponsored insurance. A draft evaluation design should be submitted with the application, and the final evaluation design will be submitted for CMS approval no more than 180 days after demonstration approval.

Evaluation designs will be expected to include a discussion of the evaluation questions and hypotheses that the state intends to test, including the hypothesis that requiring certain Medicaid beneficiaries to work or participate in other community engagement activities increases the likelihood that those Medicaid beneficiaries will achieve improved health, well-being, and (if the State designs its program to pursue this additional goal) independence as contemplated in the objectives of Medicaid. Evaluation designs will be expected to include analysis of how this requirement affects beneficiaries' ability to obtain sustainable employment, the extent to which individuals who transition from Medicaid obtain employer sponsored or other health insurance coverage, and how such transitions affect health and well-being.

The hypothesis testing should include, where possible, assessment of both process and outcome measures, and proposed measures should be selected from nationally-recognized sources and national measures sets, where possible. The evaluation design should use both quantitative and qualitative methods, and will need to identify comparison groups and appropriate statistical analyses to evaluate the impact of the demonstration. Evaluation designs should also include descriptions of multiple data sources to be used, including but not limited to multiple stakeholder perspectives, surveys of beneficiaries (both enrolled and those no longer enrolled as a result of the implementation of program requirements), claims data, and survey data (such as Consumer Assessment of Healthcare Providers and Systems (CAHPS)).

To the extent permitted by federal and state privacy laws, states should be prepared to track and evaluate health and community engagement outcomes both for those who remain enrolled in Medicaid, and those who are subject to the requirements but lose or experience a lapse in eligibility or coverage during the course of the demonstration, and provide details on how they will track these outcomes in their demonstration evaluation designs. Ongoing monitoring and evaluation efforts will help CMS learn more about the challenges and successes states experience while implementing innovative policies to increase productive community engagement, which we will then be able to share with other states looking to achieve similar goals related to their residents' well-being.

We hope this information is helpful, and we look forward to continuing to work with states to implement innovative solutions to improve their Medicaid programs. Questions and comments regarding this policy may be directed to Judith Cash, Acting Director, State Demonstrations Group, CMCS, at 410-786-9686.

Page 10- State Medicaid Director

Sincerely,


/s/

Brian Neale
Director


Cc:
National Association of Medicaid Directors
National Academy for State Health Policy
National Governors Association
American Public Human Services Association
Association of State and Territorial Health Officials
Council of State Governments
National Conference of State Legislatures
Academy Health
National Association of State Alcohol and Drug Abuse Directors